**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 2, 2022**

# In the Court of Appeals of Georgia

A22A0602. PATE v. THE STATE.

McFadden, Presiding Judge.

After a jury trial, Ronnie Pate was acquitted of malice murder and felony murder but convicted of aggravated assault and possession of a firearm during the commission of a felony. He appeals the denial of his motion for new trial, arguing that the trial court erred by denying his pretrial motion for immunity from prosecution. We hold that the trial court did not err, so we affirm.

1. *Procedural posture.*

Before trial, Pate filed a motion for immunity from prosecution and an amended motion, contending that he was entitled to immunity from prosecution on the basis that he reasonably believed his action in shooting the victim was necessary to prevent imminent death or great bodily injury to himself or his girlfriend, or in

defense of habitation. The trial court conducted a hearing on the motion at which Pate was the only witness to testify. After the presentation of Pate's evidence, the state moved to dismiss the motion on the ground that Pate had failed to carry his burden of showing that he was entitled to immunity. The court orally stated that she was granting the state's motion to dismiss and that she was denying the motion for immunity from prosecution. Because the trial court ruled in its favor after Pate had presented his case, the state did not put forward any evidence.

The case proceeded to trial. Pate testified and the trial court instructed the jury on justification defenses. The jury rejected the defenses, finding Pate guilty of aggravated assault and the firearms offense. The trial court denied Pate's motion for new trial, and this appeal followed.

2. *Procedural issues*.

We initially address some procedural issues that could create confusion. Although the trial court stated that she was granting the state's motion to dismiss Pate's motion for immunity from prosecution, she in fact denied the state's motion on the merits. See *Lewis v. Grovas*, 62 Ga. App. 624, 625 (9 SE2d 281) (1940) (a resolution of a motion on the merits is a denial, not a dismissal). Cf. *McDaniel v. State*, 311 Ga. 367, 373 (857 SE2d 479) (2021) ("[W]hen a trial court is presented

with a motion that it lacks jurisdiction to decide and denies the motion solely on the merits, we vacate the trial court's order and remand with instructions to dismiss the motion."). The court considered the evidence presented by Pate and concluded that he had not met his burden of showing by a preponderance of the evidence that he was entitled to immunity. See *State v. Cooper*, 324 Ga. App. 32 (1) (749 SE2d 35) (2013). The effect of the trial court's decision—made after Pate had presented his case but before the state had presented its case—was to truncate the evidentiary proceeding. But because Pate had the burden of showing that he was entitled to immunity and he was given the opportunity to present his case, the trial court, acting as the factfinder, was within her discretion.

We also observe that in the order denying Pate's motion for new trial, the trial court held that she "continue[d] to find that [Pate], through the evidence presented, failed at any time to make a prima [facie] case of immunity by a preponderance of evidence standard according to OCGA § 16-3-24.2 based on any defense of self, others, habitation or property." Whether a party has made a prima facie case is a separate question from whether a party has made a credible case. At the motion-for-immunity stage, "[t]he issue of immunity is a question for the trial court prior to trial, with the defendant bearing the burden of showing by a preponderance of the evidence

that he is entitled to immunity." *Cooper*, 324 Ga. App. at 32 (1) (citation omitted). Accord *Bunn v. State*, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). Once the case was before the jury, the state bore the burden of proof beyond a reasonable doubt, the issue of Pate's justification defense was for the jury to decide, and the jury was free to reject it. *Williams v. State*, __ Ga. __ (1) (__ SE2d __) (Case No. S22A0210, decided Feb. 15, 2022).

The trial court made clear that her ruling on the motion for immunity was founded on a credibility determination. We must defer to that determination. So there is no reason for us to address whether Pate made a prima facia showing.

3. *Immunity from prosecution*.

In his amended motion for immunity from prosecution, Pate argued that he used force in accordance with OCGA §§ 16-3-21 and 16-3-23. OCGA § 16-3-21 provides in part:

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent

4

death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). OCGA § 16-3-23 provides in part:

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if:

(1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;

(2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or

(3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

5

OCGA § 16-3-23. A person who uses force in accordance with OCGA §§ 16-3-21 or 16-3-23 "shall be immune from criminal prosecution therefor" except in certain circumstances not at issue here. OCGA § 16-3-24.2. (Pate also argues on appeal that under OCGA § 16-2-24 (a), he was entitled to use force in defense of his property. But he did not assert this ground in his motion for immunity, so we will not consider it on appeal.)

On appeal, "we review the evidence in the light most favorable to the trial court's ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them." *State v. Remy*, 308 Ga. 296, 298 (3) (840 SE2d 385) (2020) (citations and punctuation omitted). And "a trial court is not required to credit testimony merely because it is unrebutted. That is so because as the factfinder in [an immunity] proceeding, witness credibility is a matter for the court." *Johnson v. State*, 290 Ga. 382, 384 (2) (a) (721 SE2d 851) (2012) (citations omitted).

Pate's testimony at the immunity hearing, which we view with those principles in mind, was as follows. Pate lived in a camper with his girlfriend, Julia Fischel. The victim, Fischel's adult son, stayed on the property, mostly sleeping in his car, although he had slept in the camper two or three nights when he was sick. On the day

6

of the incident, Pate, Fischel, and the victim were returning from a food bank in Pate's truck. Fischel and the victim began arguing. Pate told them to shut up while he was driving. The victim jumped out of the truck, and Pate drove off.

Fischel implored Pate to go back to pick up her son, and he did. When the victim entered the truck he threatened to break the windows if Pate said "one word." Pate was afraid and did not speak until they reached home.

When they reached the property, the victim exited the truck and, instead of unlocking Pate's gate, tore it down. When they reached the camper, Pate asked Fischel to bring in the groceries with the victim, and then he went into the camper. While Pate was sitting on the bed, the victim began screaming and throwing cans of food at the camper, which scared Pate.

Pate used a shotgun to fire a warning shot through the roof to get the victim to leave. Instead of leaving, the victim ran into the camper, screaming, "Kill me, m***** f*****." Pate, whose leg had been amputated and who was sitting on the bed, could not get up because his crutches were not near him. The unarmed victim grabbed at Pate and grabbed for Pate's shotgun. Pate fired the shotgun, hitting and killing the victim. Pate testified that he was afraid that the victim would take the shotgun and kill Pate or Fischel.

Pate explained that he feared the victim because he had seen the victim hit his mother, damage another person's house by throwing rocks, and break someone's windshield by throwing a rock while that person was driving.[1] The victim had also thrown a rock at Pate before. Further, the victim had threatened to burn down the camper a couple of days before the shooting, had tried to tear Pate's gun rack off the wall, and had thrown something at Pate's face when he could not remove the gun rack. He also previously had threatened to kill Pate if Pate called the police on him.

As noted, the trial court orally granted the state's motion to dismiss the motion for immunity and denied the motion for immunity. The court stated the correct preponderance-of-the-evidence standard but made no findings of fact.

Because the trial court made no findings of fact, our review is limited. The only evidence presented was Pate's testimony. But the trial court was "not required to credit [his] testimony merely because it [was] unrebutted." *Johnson*, 290 Ga. at 384 (2) (a).

---

[1] "(A)lthough [the Georgia appellate courts have] not yet decided whether, under the current Evidence Code, a victim's specific acts of violence of which the defendant had personal knowledge may be admissible to show the defendant's state of mind with respect to a claim of self-defense, something that federal courts have allowed, this case does not call on us to decide that issue." *Beck v. State*, 310 Ga. 491, 498 (3) (852 SE2d 535) (2020) (citations and punctuation omitted).

In the absence of evidence of record demanding a finding contrary to the judge's determination, we will not reverse the trial court's ruling. Moreover, we presume the trial court knew the law and faithfully and lawfully performed the duties devolved upon [her] by law. We will not presume the trial court committed error where that fact does not affirmatively appear. Accordingly, viewing the evidence most favorably to the trial court's [ruling], as required by our standard of review, we must conclude that the trial court properly denied the motion [for immunity from prosecution].

*O'Shields v. State*, 351 Ga. App. 800, 804 (1) (833 SE2d 290) (2019) (citations and punctuation omitted) (affirming denial of motion to suppress where trial court denied the motion without explanation or any factual findings).

*Judgment affirmed. Gobeil and Pinson, JJ., concur*.